**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| SHANNON R. MOTHERSHED, | ) | CASE NO. 3:21-CV-00171-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

Plaintiff, Shannon R. Mothershed, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Mothershed's Statement of Errors and AFFIRM the Commissioner's decision.

## II.      Procedural History

On September 6, 2016, Mothershed filed an application for SSI, alleging a disability onset date of August 21, 2015. (ECF No. 19, PageID #: 457). The application was denied initially and upon reconsideration, and Mothershed requested a hearing before an administrative law judge ("ALJ"). (ECF No. 19, PageID #: 319). On May 17, 2018, an ALJ held a hearing, during which Mothershed, represented by counsel, and an impartial vocational expert testified.  (ECF No. 19, PageID #: 188). On August 15, 2018, the ALJ issued a written decision finding Mothershed was

1

not disabled. (ECF No. 19, PageID #: 278). On August 15, 2019, the Appeals Council remanded

the case back to the ALJ to review new evidence received after the ALJ's decision and obtain

additional evidence as necessary. (ECF No. 19, PageID #: 302–04). On March 17, 2020, the same

ALJ held another hearing, during which Mothershed, represented by counsel, and an impartial

vocational expert testified. (ECF No. 19, PageID #: 164). On April 9, 2020, the ALJ issued a

second written decision again finding Mothershed was not disabled. (ECF No. 19, PageID #: 134).

The ALJ's decision became final on November 27, 2020, when the Appeals Council declined

further review. (ECF No. 19, PageID #: 123).

On January 21, 2021, Mothershed filed her Complaint to challenge the Commissioner's

final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 20, 21,

22). Mothershed asserts the following assignments of error:

> (1) The ALJ's finding with respect to Listing 1.04 is neither properly
> explained or supported by substantial evidence.
>
> (2) SSR 96-6p remains applicable to applications filed before March
> 27, 2017.
>
> (3) If applicable, SSR 17-2p, insofar as it purports to eliminate the
> requirement to obtain updated medical opinion evidence regarding
> medical equivalency when there is new evidence relevant to that
> issue, is inconsistent with 42 U.S.C. §405a, and is therefore invalid.

(ECF No. 20 at 2).

## III.    Background

### A.        Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Plaintiff's hearing:

> In the initial application and at the hearing, the claimant alleged that
> she was unable to work due to complications from gastric bypass
> surgery, anemia, varicose veins, chronic venous insufficiency, high
> blood pressure, Imerslund-Grasbeck syndrome, anxiety, and
> depression. Furthermore, in the adult disability and function reports,

2

the claimant stated that she has chronic weakness and fatigue, lower back pains, depression, and anxiety. Continuing, the claimant reported that she has difficulties with sitting and standing for extended periods, difficulties with concentration, and indicated that she has to have blood transfusions periodically. . . . With respect for daily functions, the claimant stated that she has difficulties with doing tasks or chores because of low energy levels, weakness, and chronic pain. The claimant also reported that she has difficulties dressing, buttoning clothes, and stated that her daughter assists with most chores. Additionally, the claimant stated that she could only stand 5-10 minutes, walk 15 minutes, sit 20 minutes, and lift 8 pounds (a gallon of milk). . . . At the hearing, the claimant testified that she had surgery on her lower back in April 2019 and will need an additional surgery. . . .

(ECF No. 19, PageID #: 145–46).

### B.      Relevant Medical Evidence

The ALJ also summarized Plaintiff's health records and symptoms:

[In July 2015] claimant was . . . assessed with a history of anxiety and depression, as well as some symptoms of lower back pains. (Id., p. 25).

Then, in December 2015, the record reflects that the claimant was re-evaluated at the Toledo Clinic as part of her continuum of care. (Ex. B1F, p. 5-6). During the clinical interview and physical examination, she was noted to have persistent symptoms of lower back pains suggestive of lumbago that radiated into the lower extremities. Additionally, the claimant reported some symptoms of cervical spinal pain and numbness in the lower extremities. (Id., p. 6). She was then given a comprehensive physical examination, which showed grossly normal appearing upper and lower extremities, normal squat, but positive straight leg raise and positive signs for pain with internal/external rotation of the lower extremities. The claimant was found to have no evidence of fasciculation or atrophy. (Id., p. 6). She was then referred for diagnostic x-rays of the lumbar and dorsal spine, and was recommended for an EMG study the bilateral lower extremities. The claimant was also placed on Ultram and Zanaflex for her symptoms of pain. (Id., p. 5).

Although the results of the EMG studies were not submitted for consideration in this appeal, records from May 2016 show that the claimant reported generalized aches and pains, back pain, and joint

stiffness. (Ex. B1F, p. 8-9). . . . Then, in June 2016, the claimant was re-evaluated at the Toledo Clinic, where she was noted to have continued symptoms of weakness in the lower extremities. (Ex. B4F, p. 12). During the subsequent clinical interview and physical examination, she reported recent falls, imbalance, stumbling while walking, and generalized symptoms of fatigue and weakness. (Id., p. 12). However, the records from her physical examination failed to show that she had any evidence acute neurological deficits in either of the lower extremities. Furthermore, the records reflect that she had 5/5 motor strength in the bilateral lower extremities, normal cranial nerve function without evidence of sensation deficits, or evidence of tremors in the lower extremities. The claimant was found to have some mild Hoffman's sign on the left side; however, the treatment notes show that she was found to have grossly normal coordination despite the mild Hoffman's signs. She was then recommended for an MRI scan of the brain and of the cervical spine. (Id., p. 13). However, the results of the MRI scans of the cervical spine showed that she had only mild evidence of uncovertebral joint degenerative changes and broad-based bulging in the cervical spine from C2 through C7. (Ex. B3F, p. 2-3). Additionally, the MRI scans showed that she had only mild loss in the normal cervical lordosis likely related to positioning or muscle spasm. The MRI scans failed to show that she had any evidence of canal or neural foraminal narrowing, fractures, or acute osseous abnormalities. (Id., p. 3). The MRI scans of the claimant's brain also failed to show any evidence of acute intracranial abnormalities. (Id., p. 4).

In September 2016, the record reflects that the claimant was re-evaluated at the Toledo Clinic as part of her continuum of care. (Ex. B4F, p. 9-10). During the subsequent clinical interview and mental status examination, she reported increased symptoms of anxiety, persistent fatigue, back pains, numbness and tingling in the lower extremities, imbalance and weakness. (Id., p. 9). The claimant was also noted to have some symptoms consistent with osteoarthritis and/or degenerative joint disease. However, the claimant's physical examination showed that her bilateral upper and lower extremities appeared to be normal, and show that she could bend over and touch her knees without difficulties. (Id., p. 11). The treatment notes also show that she was found to have grossly normal deep tendon reflexes in the lower extremities, but positive straight leg raises bilaterally. (Id., p. 11). She was then assessed with fatigue secondary to anemia (malabsorption with proteinuria/Imerslund-Grasbeck syndrome), cervical stenosis, lumbago, osteoarthritis, and degenerative joint disease. (Id., p. 9). For treatment, she was continued on dietary supplements and pain medications, and was recommended to follow up for periodic monitoring. (Id., p. 10). The

4

claimant was also recommended for therapeutic injections of Toradol, which she received September 28, 2016. (Id., p. 8). . . .

[In October 2017], images of the claimant's lumbar spine showed that she had mild to moderate evidence of degenerative changes, particularly at L3-4, with straightening of the lordosis. (Id., p. 20-21). Images of the claimant's left femur also failed to show any evidence of fractures or degenerative processes. (Id., p. 18). She was then recommended for an MRI scan of the lumbar spine, which showed mild to moderate degenerative changes with mild central canal narrowing and a small broad-based disc protrusion at L5-S1 with mass effect on the adjacent left S1 nerve root, and was continued on maintenance medications. (Id., p. 14; Ex. B14F, p. 9). . . .

Upon examination, she had complaints of lower back pains secondary to disc herniation and nerve root impingement at S1, but otherwise had no evidence of lower extremity swelling. (Id., p. 6). . . . She was then recommended to continue on pain medications for her lower back pains and was encouraged to diet, exercise, and follow up for periodic monitoring. (Id., p. 5-6). The claimant was also referred for SI joint injections in January 2018, physical therapy services, and for traction therapy and pain management. (Id., p. 2-3). Although only limited records from physical therapy and pain management were provided for consideration in this appeal, records from May 2018 show that the claimant continued to report pain with bending, squatting, and reaching. (Ex. B16F, p. 2). However, the records also show that she requested paperwork for her school in May 2018, suggesting that she retained the residual functional capacity to attend classes despite any limitations in functioning. (Ex. B17F, p. 2). In June 2018, the claimant was initiated on opioid therapy for her complaints of lower back pains. (Ex.B18F, p. 1-3). The claimant also received lower back injections in August 2018. (Ex. B20F, p. 21). The undersigned also notes that in August 2018, the claimant was evaluated at Stress Care Behavioral Health as part of her opioid treatment regimen and was subsequently diagnosed with chronic pain with psychological factors (slight depression). (Ex. B19F, p. 2). The claimant was eventually referred for lower back surgery, which occurred on January 14, 2019. (Ex. B12F, p. 1-3).

Since undergoing lower back surgery in January 2019, the record reflects that the claimant has received ongoing pain management services at the Toledo Clinic as part of her continuum of care. (Ex. B22F and B23F). Although the medical records show that she has continued to report some symptoms of lower back pains, the

5

treatment notes also show that she has responded well to pain management services for residual symptomology. Specifically, treatment notes from January 2019 show that she was ambulatory and participating in home-based exercises. (Ex. B23F, p. 51). Additionally, treatment notes from February 2019 show that the claimant reported adequate pain relief with medications despite continued difficulties with standing or walking for extended periods secondary to lower back pains. (Id., p. 45). By March 2019, the claimant was described as ambulating without an antalgic gait and was found to have 5/5 motor strength in the bilateral lower extremities, without complaints of neural deficits. (Id., p. 38). Progress reports from April 2019 also show that the claimant presented with a grossly normal mood and affect despite her history of anxiety and depression. (Id., p. 30). However, the undersigned notes that the claimant reports some increases in lower extremity pains in April 2019, for which she was continued on opiate medications. (Id., p. 30-32). The claimant was referred for an updated MRI scan in June 2019, which showed some residual scarring at L5-S1 from the hemilaminectomy, which abutted the S1 nerve root on the left side and a small disc protrusion causing minimal mass effect on the thecal sac. (Ex. B22F, p. 4). For treatment, she was continued on pain medications, including epidural steroid injections, and was recommended for periodic monitoring. (Ex. B23F, p. 27 and Ex. B24F, p. 5). . . . However, the treatment notes show that the claimant has not required inpatient hospitalizations for her residual impairments and complaints of pain. . . .

(ECF No. 19, PageID #: 146–51).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: iron deficiency anemia and vitamin B-12 deficiency; varicose veins; small caliber venous insufficiency of the greater saphenous vein; reflux of the greater saphenous vein; malabsorption with proteinuria; depression; anxiety; Imerslund-Grasbeck syndrome; degenerative disc disease of the lumbar and cervical spine; ganglion cyst left wrist; fracture right hand - minimally displaced 4th metacarpal (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and frequently handle, finger, and feel with the bilateral upper extremities. She can never exercise foot controls with the bilateral lower extremities; and never be exposed to hazards such as moving machinery and unprotected heights. She is limited to performing simple, routine and repetitive tasks, but not at a production rate pace (so, for example, no assembly line or conveyor belt work); and is limited to making simple work-related decisions. She can respond appropriately to occasional interaction with supervisors and coworkers, but should have no interaction with the general public. She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work environment; any necessary changes need to occur infrequently, and be adequately and easily explained.

(ECF No. 19, PageID #: 141, 144–45).

## V.     Law & Analysis

### A.          Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r*

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

*v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. §

405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.        Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in

determining whether a claimant is entitled to supplemental-security income or disability-insurance

benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

claimant has a severe impairment or combination of impairments; (3) if so, whether that

impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404,

Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light

of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age,

education, and work experience, she can perform other work found in the national economy. 20

C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir.

2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she

is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

claimant has the residual functional capacity to perform available work in the national economy.

*Id.*

### C.        Discussion

Mothershed raises three issues on appeal. First, she argues that the ALJ did not properly explain or sufficiently support his Listing 1.04 analysis. Second, Mothershed asserts that SSR 96-6p is applicable to her application and it required the ALJ to further develop the record after she provided significant additional medical records. Third, as an alternative to her second argument, Mothershed suggests if SSR 96-6p does not apply to her application, then the new SSR, SSR 17-2p, applies and it is invalid because it conflicts with 42 U.S.C. § 405a.

### 1.  The ALJ's Listing 1.04 Determination

Mothershed argues that the ALJ's Listing 1.04—Disorders of the Spine—analysis was conclusory, unexplained, and not supported by substantial evidence. The Commissioner responds that the ALJ properly determined Mothershed did not meet the Listing and sufficiently explained her decision. Moreover, the ALJ states that any error was harmless because Mothershed does not meet the Listing and she fails to argue otherwise.

Generally, to meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* Listing 1.04 requires:

> [A disorder of the spine] (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate

9

medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404 Subpart P, App. 1.

The ALJ considered this Listing and stated:

[T]he limitations of the claimant do not satisfy the terms of Listing 1.04 for Disorders of the Spine. The claimant does not have a condition that results in the compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging and manifested by chronic pain and weakness.

(ECF No. 19, PageID #: 142). Elsewhere in the decision, the ALJ also noted a lack of any evidence of acute neurological deficits in her legs, normal gait, 5/5 motor strength, lack of sensation deficits, normal coordination, that "she could bend over and touch her knees without difficulties," and normal deep tendon reflexes.[1] (ECF No. 19, PageID #: 147).

Mothershed's argument focuses on her allegation that the ALJ's explanation fails to meet the standard set forth in *Reynolds v. Commissioner of Social Security*. 424 F. App'x 411 (6th Cir. 2011). There, the ALJ stated that the claimant did not meet a specific Listing but failed to give any analysis of the claimant's medical record or any explanation of why the claimant failed to meet the Listing. *Id.* at 415. The court concluded that this was error, explaining that "the ALJ needed to

---

[1]  These findings provide substantial evidence for the ALJ's conclusion that Mothershed did not meet the Listing. This provides another reason to reject Mothershed's arguments. *See Forrest v. Comm'r of Soc. Sec*, 591 F. App'x 359, 366 (6th Cir. 2014) (affirming the ALJ's decision where he "made sufficient factual findings elsewhere in his decision to support his conclusion at step three").

actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. *Id.* at 416. The error was not harmless because "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* Mothershed relies on this case, asserting that the ALJ's cursory statements failed to evaluate the evidence and give a sufficient explanation.

The Commissioner responds: 1) the ALJ met the minimal articulation requirements; 2) later in the decision, the ALJ also pointed to evidence showing Mothershed did not meet Listing 1.04; and 3) any error would have been harmless. Because the parties' arguments center around the third argument, the Court will first consider whether any error would have been harmless. The Commissioner correctly explains that, since *Reynolds*, the Sixth Circuit has taken a different approach to this situation. *See Fronczak v. Berryhill*, No. CV 16-11554, 2017 WL 3773236, at *3 (E.D. Mich. Aug. 7, 2017), *report and recommendation adopted*, No. 16-CV-11554, 2017 WL 3727317 (E.D. Mich. Aug. 30, 2017). In *Forrest v. Commissioner of Social Security*, the claimant challenged the ALJ's step three analysis where the ALJ sparsely explained why the claimant did not meet a certain Listing. 591 F. App'x 359, 365 (6th Cir. 2014). The court concluded that the ALJ did not err because he "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366 (citations omitted). Moreover, the court stated that "even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment." *Id.* (citations omitted). Relying on this case, the Commissioner states that the Court can look elsewhere in the ALJ's decision to support the conclusion that Mothershed did not meet the Listing and, regardless, any error would have been harmless because Mothershed does not meet

11

the Listing. Notably, many district courts have followed this approach. *See e.g.*, *Fronczak v. Berryhill*, 2017 WL 3773236, at *3 ("Fronczak alleges that his impairments meet Listings 4.11, 4.12, and 11.14, but he provides no support. Thus any error is harmless." (footnote omitted)); *DeCaro v. Kijakazi*, No. 1:20-CV-01516, 2022 WL 911775, at *9 (N.D. Ohio Mar. 29, 2022) ("Even if the ALJ's explanation could have been more thorough, the Sixth Circuit has held that a matter should not be remanded where the plaintiff cannot establish that 'a ruling was anything but harmless error,' noting the futility of 'sending the case back to the ALJ' where it would not 'serve any useful purpose . . . .'" (alterations in original) (citations omitted)).

Nonetheless, in her reply brief, Mothershed states that recent cases have followed *Reynolds* and remanded ALJ decisions that failed to adequately discuss certain listings, pointing the Court to three cases she suggests support her argument. However, a review of the cases demonstrates an important distinction. In each of the cases the court concluded that there was sufficient evidence to suggest that the claimant met the relevant listing. *See Harvey v. Comm'r of Soc. Sec.,* No. 16-3266, 2017 WL 4216585, at *5 (6th Cir. Mar. 6, 2017) (remanding where the ALJ completely failed to analyze the evidence under a certain Listing and there was evidence indicating that the could meet the Listing); *Lanham v. Comm'r of Soc. Sec.*, No. 5:16 CV 1204, 2017 WL 2912532, at *8 (N.D. Ohio June 26, 2017) ("Because the ALJ failed to analyze the medical evidence pursuant to the criteria of Listing 14.06, and Plaintiff cites to evidence in the record showing her condition could medically equal the Listing, the case must be remanded."), *report and recommendation adopted sub nom. Pamela J. Lanham, Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 5:16 CV 1204, 2017 WL 2908865 (N.D. Ohio July 7, 2017); *Vaughan v. Comm'r of Soc. Sec.*, No. 2:16-CV-454, 2018 WL 1521811, at *2 (S.D. Ohio Mar. 28, 2018) ("Accordingly, the record demonstrates a substantial question as to whether Plaintiff could qualify as disabled under Listing

1.04(A), and the ALJ erred by failing to explicitly consider that listing."). This turned the ALJ's

inadequate analysis into harmful error, requiring remand.

Here, however, Mothershed does not point the Court to the necessary evidence indicating

that she could meet Listing 1.04.[2] Although she disputes the ALJ's statement that there was no

evidence of nerve root compression, she does not point to any evidence that she had limited spine

motion, motor loss, or sensory or reflex loss, as is necessary to meet Listing 1.04(A).[3] Mothershed

conclusively states that the "medical records document, at various points during the period at issue,

findings of weakness in the lower extremities and positive straight leg raising signs, and

corroborate Plaintiff's testimony with respect to chronic back and radicular leg pain." (ECF No.

20 at 14). Per Listing 1.04(A), motor loss can be demonstrated by atrophy with associated muscle

weakness or muscle weakness. The Court finds one citation—in the facts section—to evidence of

muscle weakness in Mothershed's briefs. The medical record cited states: "Strength and handgrips

is slightly down as well as the lower extremities. No fasciculation or atrophy is noted." (ECF No.

19, PageID #: 585). With no evidence of atrophy, this record is insufficient to demonstrate what is

required to show motor loss. Thus, Mothershed did not provide evidence that raises a substantial

question as to whether she met Listing 1.04. *See Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020

WL 6882255, at *3 (6th Cir. Aug. 10, 2020) ("A claimant 'must point to specific evidence that

demonstrates [s]he reasonably could meet or equal every requirement of the listing.'" (alteration

in original) (citations omitted)). This is unsurprising as the ALJ correctly pointed out that the

---

[2] The Commissioner pointed out that she failed to point to evidence that she met all of the Listing's criteria (ECF No. 21 at 6) and Mothershed failed to respond to this argument in her reply brief.

[3] Mothershed does not dispute the ALJ's statements that she does not demonstrate spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, precluding her from meeting Listing 1.04(B) or 1.04(C).

medical records demonstrated that Mothershed had 5/5 motor strength, lack of sensory deficits, and grossly normal reflexes. The failure to show that she could meet the Listing makes the cases Mothershed relies on inapposite. The Court, therefore, concludes that Mothershed's argument must fail because any error would have been harmless.

### 2.  SSR 96-6p

Mothershed next argues that SSR 96-6p required the ALJ to obtain an updated medical opinion after she provided additional medical evidence. She suggests that the ALJ's Listing conclusions could not have been supported by substantial evidence without an updated opinion. The Commissioner responds that, assuming SSR 96-6p applies[4], Mothershed mischaracterizes its requirements. The Commissioner asserts that the ALJ was not required to obtain an additional opinion because Mothershed has not shown that later evidence could have changed the state agency opinions regarding the Listings 'in the opinion of the administrative law judge.'" (ECF No. 21 at 7).

Indeed, SSR 96-6p provides that an updated medical opinion from an expert is required: "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." 1996 WL 374180, at 4. "Thus, the ALJ has discretion when determining whether further evidence is required." *Ison v. Acting Comm'r of Soc. Sec.*, No. 2:16-CV-00464, 2017 WL 4124586, at *9 (S.D. Ohio Sept. 18, 2017) (citation omitted). In considering whether the ALJ erred

---

[4] Mothershed acknowledges that there is some argument as to whether SSR 96-6p applies to her application. (ECF No. 20 at 17). However, the Commissioner does not contest whether SSR 96-6p applies to Mothershed's application.  (ECF No. 21 at 7). Rather, the Commissioner states that, even if it did apply, there was no error. (ECF No. 21 at 7).

under this regulation, courts look to whether the claimant can show that the new evidence demonstrates that she has an impairment that meets or equals a Listing. *See Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723–24 (6th Cir. 2012).

Here, Mothershed states that the additional evidence includes:

> an MRI in December, 2017 which demonstrated left L5-S1 disc protrusion "with mass effect on the left S1 nerve root;18 a January 4, 2019 left L5-S1 micro discectomy, resulting in a postoperative diagnosis of left L5-S1 disc herniation; 19 an MRI in June, 2019 which revealed continued disc protrusion at L5-S1, with findings suggestive of scar tissue abutting the left L5-S1 nerve root and new findings of moderate foraminal stenosis on the right at L4-5; 20 and a June 25, 2019 record from Plaintiff's treating neurosurgeon diagnosing a new foraminal disc protrusion at L4-5 causing what he described as severe foraminal stenosis, for which he recommended L4-5 laminectomy and transforaminal lumbar interbody fusion at L4-5.

(ECF No. 22 at 7). Mothershed states that before this new evidence, there was very little objective medical evidence of disc herniation, nerve root compression, or radiculopathy to support a conclusion that she met Listing 1.04.

However, Mothershed does not argue that the additional records demonstrate that Mothershed had limited spine motion, motor loss, or sensory or reflex loss, as is necessary to meet Listing 1.04(A).[5] In fact, as the ALJ noted, in March 2019, Mothershed "was described as ambulating without an antalgic gait and was found to have 5/5 moto[r] strength in the bilateral lower extremities, without complaints of neural deficits." (ECF No. 19, PageID #: 150 (citing ECF No. 19, PageID #: 150)). As a result, Mothershed instead argues that the combination of this new evidence with her previous evidence meets the Listing. However, as discussed above, Mothershed

---

[5] Mothershed additionally does not argue that the additional records show arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, precluding her from meeting Listing 1.04(B) or 1.04(C).

has failed to point to any evidence (new or old) that shows the additional requirements to meet Listing 1.04. Thus, Mothershed has not shown that the additional evidence may have changed the State agency medical consultant's finding that her impairment is not equivalent in severity to Listing 1.04. *See Freeman v. Comm'r of Soc. Sec.*, No. 14-CV-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015) ("Plaintiff argues that new evidence showed that his impairments were worse, yet he fails to identify evidence that would support a finding that Plaintiff meets or equals a listing."). The Court, therefore, concludes that the ALJ did not err in failing to request an updated medical opinion.

Nonetheless, Mothershed additionally argues that, because the State agency consultants' opinions were rendered before the additional evidence was provided, the ALJ's Listing 1.04 finding "was unsupported by any evidence from a physician based on review of all relevant medical evidence of record." (ECF No. 20, PageID #: 1073). First, there is no requirement that the ALJ base his Listing determination on a medical provider's opinion. The ALJ considers opinions from medical sources to determine whether an impairment meets or equal a Listing, but "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527 (d)(2). "The ALJ must review the evidence . . . to make the ultimate decision as to whether that evidence proves or undermines an individual's claim of . . . disability." *Courter*, 479 F. App'x at 722. Mothershed provides no support for her argument that the ALJ was required to rely on a medical opinion. Second, the ALJ made other findings in his decision that provide substantial evidence for his conclusion. *See Forrest v. Comm'r of Soc. Sec*, 591 F. App'x 359, 366 (6th Cir. 2014) (affirming the ALJ's decision where he "made sufficient factual findings elsewhere in his decision to support his conclusion at step three"). As previously noted, Listing 1.04(A) requires sensory or reflex loss and motor loss. The ALJ found that Mothershed had grossly normal reflexes

16

and a lack of sensation loss. He also noted multiple times that Mothershed had 5/5 motor strength

and Mothershed herself has failed to point to any evidence of motor loss.[6] Finally, this argument

is irrelevant to the standard necessary to prove error here because Mothershed was required to

demonstrate that the additional evidence would have changed the consultants' prior opinion, which

she has not. Accordingly, the Court concludes that the ALJ did not err in failing to request an

additional medical opinion.

Additionally, the Court notes that Mothershed raises an alternative argument. She argues

that if SSR 96-6p did not apply and instead SSR 17-2p does, SSR 17-2p conflicts with 42 U.S.C.

§ 405a insofar as it eliminates the ALJ's requirement to obtain updated medical opinion evidence.

She asserts that SSR 17-2p is therefore invalid. Because the Commissioner does not argue that

SSR 96-9p does not apply and the Court assumed that SSR 96-6p applied in this case, it need not

consider Mothershed's argument in the alternative.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: May 24, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).

---

[6] As discussed previously, Mothershed's one citation stating that she had muscle weakness specifically stated that there were no signs of atrophy, precluding a finding of motor loss.